1
2
3
4
5
6
7
8            IN THE UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10   GARY STILES,

11              Plaintiff,                    No. CIV S-07-1972 DAD

12        vs.

13   MICHAEL J. ASTRUE,                   ORDER
     Commissioner of Social Security,
14
                Defendant.
15   _____/

16              This social security action was submitted to the court without oral argument for

17   ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary

18   judgment.  For the reasons explained below, plaintiff's motion is denied, defendant's cross-

19   motion is granted, and the decision of the Commissioner of Social Security (Commissioner) is

20   affirmed.

21                              **PROCEDURAL BACKGROUND**

22              On March 2, 2004, plaintiff filed an application for Disability Insurance Benefits

23   (DIB) under Title II of the Social Security Act (the Act), alleging onset of disability on June 19,

24   2003.  (Transcript (Tr.) at 73-75.)  Plaintiff's application was denied initially on May 21, 2004,

25   and upon reconsideration on November 18, 2004.  (Tr. at 43-44.)  Plaintiff's request for a hearing

26   was received by the Social Security Administration on January 14, 2005.  (Tr. at 54.)  On May

                                        1

31, 2005, while awaiting a hearing date, plaintiff filed an application for Supplemental Security

Income (SSI) under Title XVI of the Act.  (See tr. at 20.[1])  Plaintiff's applications for DIB and

SSI were considered at the hearing held before an Administrative Law Judge (ALJ) in North

Carolina on August 1, 2005.  (Tr. at 375-402.)  Plaintiff was represented by counsel and testified

at the hearing, as did a vocational expert.  At a supplemental hearing before the same ALJ on

September 14, 2006, plaintiff was represented by the same attorney and again testified, as did a

second vocational expert.  (Tr. at 403-30.)  In a decision issued on December 21, 2006, the ALJ

entered the following findings:

> 1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.
>
> 2.  The claimant has not engaged in substantial gainful activity since June 19, 2003, the alleged onset date (20 CFR 404.1520(b), 404.1571 et seq., 416.920(b) and 416.971 et seq.).
>
> 3.  The claimant has the following severe impairments:  bilateral carpal tunnel syndrome (CTS), toxic lead exposure and degenerative disc disease (cervical) (20 CFR 404.1520(c) and 416.920(c)).
>
> 4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to lift/carry 50 pounds occasionally and 25 pounds frequently, sit, stand and walk for 6 hours each in an 8 hour workday.  He should never climb ladders, scaffolds or ropes.  The claimant is able to reach overhead, finger and feel frequently but should avoid concentrated exposure to fumes and exposure to hazards.  He is capable of performing simple 1-2 step tasks and having occasional contact with the public.
>
> 6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.956).

---

[1]  The transcript index indicates that "SSI Exhibits are not available for inclusion."  (Tr. at unnumbered second page n.1.)

7.  The claimant was born on September 17, 1956, and was 46 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11.  The claimant has not been under a "disability," as defined in the Social Security Act, from June 19, 2003 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. at 22-31.)

On August 11, 2007, the Appeals Council denied plaintiff's request for review of the ALJ's decision.  (Tr. at 6-9.)  Plaintiff, who is now residing in California, sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on September 20, 2007.

**LEGAL STANDARD**

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record as a whole and the proper legal standards were applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive.  Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Morgan, 169 F.3d at 599); Jones

v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. Jones, 760 F.2d at 995. The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under Title 20 of the Code of Federal Regulations, Sections 404.1520 and 416.920. Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The five-step process has been summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

1      The claimant bears the burden of proof in the first four steps of the sequential

2 evaluation process.  Yuckert, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the

3 sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094, 1098

4 (9th Cir. 1999).

5                                    **APPLICATION**

6      Plaintiff advances three arguments in support of his motion for summary

7 judgment:  (1) the ALJ failed to provide clear and convincing evidence to discredit plaintiff's

8 testimony; (2) the ALJ improperly ignored the findings of a state agency psychologist; and (3) the

9 ALJ's vocational findings are not supported by substantial evidence.  Plaintiff's arguments are

10 addressed below.

11 **I.  Plaintiff's Testimony**

12      Once a claimant has presented medical evidence of an underlying impairment, the

13 ALJ may not discredit the claimant's testimony as to the severity of his or her symptoms merely

14 because the symptoms are unsupported by objective medical evidence.  Reddick v. Chater, 157

15 F.3d 715, 722 (9th Cir. 1998); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997).

16 "'[T]he ALJ can reject the claimant's testimony about the severity of [his or her] symptoms only

17 by offering specific, clear and convincing reasons for doing so.'"  Light, 119 F.3d at 792 (quoting

18 Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)).  See Morgan, 169 F.3d at 599 (holding

19 that, absent affirmative evidence of malingering, the reasons for rejecting a claimant's testimony

20 must be clear and convincing).  However, in evaluating a claimant's subjective testimony

21 regarding pain and the severity of symptoms, the ALJ may consider the presence or absence of

22 supporting objective medical evidence, along with other factors.  Bunnell v. Sullivan, 947 F.2d

23 341, 346 (9th Cir. 1991) (en banc); Smolen, 80 F.3d at 1285.

24      Questions of credibility and the resolution of conflicts in the testimony are

25 deemed functions of the Commissioner, Morgan, 169 F.3d at 599, and the determination of

26 credibility is a function of the ALJ acting on behalf of the Commissioner, Saelee v. Chater, 94

5

F.3d 520, 522 (9th Cir. 1996).  In general, an ALJ's assessment of credibility should be given

great weight.  Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985).  The ALJ may employ

ordinary techniques of credibility evaluation and may take into account prior inconsistent

statements or a lack of candor by the witness.  Fair, 885 F.2d at 604 n.5.  The ALJ cannot,

however, substitute his or her own observations for medical diagnosis.  Marcia v. Sullivan, 900

F.2d 172, 177 n.6 (9th Cir. 1990).

Social Security Ruling 96-7p, "Assessing the Credibility of an Individual's

Statements," provides guidance for the ALJ in evaluating symptoms in disability claims.  SSR

96-7p, 1996 WL 374186 (July 2, 1996).  In addition to applying ordinary techniques of

credibility evaluation, the ALJ may consider a number of factors in assessing the credibility of

the claimant's allegedly disabling subjective symptoms.  Among those factors are the nature,

location, onset, duration, frequency, radiation, and intensity of any pain or other symptoms;

precipitating and aggravating factors; type, dosage, effectiveness, and adverse side-effects of any

medication; treatment other than medication; and unexplained or inadequately explained failure

to seek treatment or follow a prescribed course of treatment.

Here, the ALJ determined at step two of the sequential evaluation process that

plaintiff suffers from four medically severe impairments:  bilateral carpal tunnel syndrome

(CTS), toxic lead exposure, degenerative disc disease, and depression.  (Tr. at 22-23.)  The ALJ

based this determination on (1) an EMG showing moderate CTS in plaintiff's dominant left hand

and mild CTS in his right hand, which interferes with plaintiff's ability to grasp or hold items for

extended periods of time (tr. at 22, citing Ex. 16F [tr. at 307-16]); (2) medical evidence that

plaintiff's toxic lead exposure resulted in lead poisoning with a serum level of 35 and caused

plaintiff to experience flu-like symptoms, chronic headaches, and sensations of weakness as well

as arthralgias involving both wrists, shoulders, ankles, knees, and hips (id., citing Ex. 15F [tr. at

274-306]); (3) evidence of mild osteoarthritis and multi-level cervical degenerative disc disease

with disc bulging and moderate spinal canal stenosis (id.); and (4) a history of treatment for

1  depression (tr. at 23, citing Exs. 15F [tr. at 274-306], 18F [tr. at 325-48], and 19F [tr. at 349-52]).

2  The ALJ also noted several other impairments, including adjustment disorder, post-traumatic

3  stress disorder, fibromyalgia, and psoriasis, which had been diagnosed or suggested in plaintiff's

4  case but either lacked evidentiary support or did not produce functional limitations.  (Tr. at 23-

5  24.)  The ALJ considered all of plaintiff's impairments, severe and nonsevere, in determining

6  plaintiff's residual functional capacity (RFC).  (Tr. at 24.)

7          The ALJ's analysis of the medical evidence establishes the existence of

8  impairments that could reasonably be expected to produce subjective symptoms of pain,

9  weakness, and numbness.  After observing that the objective evidence was "consistent with the

10 type of subjective complaints" made by plaintiff, the ALJ emphasized that plaintiff's credibility

11 "comprises a substantial factor in determining the weight given to his subjective complaints and

12 allegations."  (Tr. at 27.)  In evaluating plaintiff's credibility, the ALJ stated that he did not

13 require the presence of objective medical evidence in determining the intensity and persistence of

14 the pain and other symptoms alleged but rather considered the factors specified in SSR 96-7p and

15 20 C.F.R. §§ 404.1529 and 416.929.  The ALJ examined the record for conflicts between

16 plaintiff's description of his physical symptoms and the descriptions he had provided in the

17 medical records.  The ALJ searched for evidence of persistent and significant limitations in range

18 of motion, muscle atrophy, weight loss, failure to seek treatment, failure to follow prescribed

19 treatment, the use of strong pain medications, persistence in seeking relief of pain, willingness to

20 try prescribed treatment, use of ambulatory devices, regular contact with doctors, and clinical

21 detection of neurological deficits, as well as ability to engage in such daily activities as caring for

22 personal needs, driving, cleaning house, and doing laundry.  (Tr. at 27-28.)

23          The ALJ found that plaintiff's allegations about his symptoms were inconsistent

24 with the medical evidence of record, with plaintiff's own reports to his physicians, and with the

25 treatment sought and received by plaintiff.  (Tr. at 28.)  In particular, the ALJ found that the

26 symptoms plaintiff routinely reported to the treating physicians "fail[ed] to rise to the severity of

his complaints made at his hearing, which suggests symptom magnification." (Id.)  In this

regard, the ALJ provided the following example:

> [T]he claimant testified at the hearing that he cannot sit, stand or walk for more than 15 minutes at a time, thereafter having to take substantial rest.  He further alleges that he is unable to handle small items such as nuts and bolts for more than ten minutes without dropping them because his hands go numb, he suffers from weakness and pain in his joints (i.e., ankles, knees), pain in his neck, skin flaking, flu-like pain in his back and depression.
>
> The objective medical evidence and the claimant's daily activities suggests an opposite conclusion.  The claimant continues to participate in regular activities of living, including cooking, taking out the trash, performing maintenance around the house, cutting the grass, fishing, scuba diving, spear fishing, performing maintenance on family vehicles at least once a week, shopping, socializing with friends and family, working on his boat, driving his car, and interacting with his children.  He has been studying to obtain his Captain's license from the United States Coast Guard and obtained a score of 60 on at least one test, part of which requires memorization of dozens of rules.  In addition to the objective medical evidence, these activities are not consistent with the claimant's allegations.  A substantial portion of the opinions offered by the claimant's treating sources are based on the claimant's subjective complaints, including his ability to perform basic work activities.  The claimant acknowledges that his symptomology is unexplained by medical evidence, particularly with respect to the lead exposure where his levels of lead are greatly reduced from the initial high level of toxicity.

(Id.)

Another inconsistency cited by the ALJ concerns plaintiff's employment.

Plaintiff's own testimony reveals that he was terminated from his most recent employment "not

due to an inability to work but when he refused to return to the worksite where he had previously

been exposed to lead."  According to plaintiff's testimony, after he was terminated from his job,

he collected unemployment benefits and sought new employment.  (Id.)  Thus, the ALJ reasoned,

plaintiff did not stop working due to his impairment, and it is permissible to infer that plaintiff

was not disabled at the time of his employment termination.  (Id.)  Other examples of evidence

inconsistent with disability include collecting unemployment benefits, seeking work, hoping to

start his own business, lack of medication during relevant periods, and lack of mental health care

1  other than medication.  (Tr. at 28-29.)  Based on the totality of the circumstances, the ALJ found

2  it reasonable to conclude that plaintiff is "less disabled than alleged," that the overwhelming

3  weight of evidence – medical and otherwise – contradicts plaintiff's allegations, and that

4  plaintiff's statements concerning the intensity, persistence and limiting effects of his impairments

5  are "not entirely credible."  (Tr. at 29.)

6          The court finds that the ALJ gave specific, clear, and convincing reasons for

7  rejecting part of plaintiff's testimony about the severity of his symptoms.  The court recognizes

8  that "disability claimants should not be penalized for attempting to lead normal lives in the face

9  of their limitations."  Reddick, 157 F.3d at 722.  However, there is substantial evidence in this

10  record that plaintiff's limitations were less than disabling for a period of twelve consecutive

11  months during the period of time between June 13, 2003, when plaintiff was terminated from his

12  job for refusing to return to the work site where he suffered toxic lead exposure in 2002, and

13  December 21, 2006, when the ALJ issued his decision.  (See tr. at 123-37, 189.)  While plaintiff

14  may not have gone about all of his activities with ease, the court finds that the ALJ fairly

15  characterized the record and sufficiently stated specific, clear and convincing reasons for not

16  fully crediting plaintiff's testimony regarding his limitations.  See Tidwell v. Apfel, 161 F.3d

17  599, 602 (9th Cir. 1998).  Plaintiff's arguments to the contrary are rejected.

18          The court concludes that plaintiff is not entitled to summary judgment on his

19  argument that the ALJ failed to provide clear and convincing evidence to discredit part of

20  plaintiff's testimony.

21  **II.  State Agency Psychologist's Assessment**

22          The weight to be given to medical opinions in Social Security disability cases

23  depends in part on whether the opinions are proffered by treating, examining, or nonexamining

24  health professionals.  Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

25  "As a general rule, more weight should be given to the opinion of a treating source than to the

26  opinion of doctors who do not treat the claimant."  Lester, 81 F.3d at 830.  This is so because a

1 treating doctor is employed to cure and has a greater opportunity to know and observe the patient

2 as an individual.  Smolen, 80 F.3d at 1285; Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir.

3 1990).

4          "The opinion of an examining physician is, in turn, entitled to greater weight than

5 the opinion of a nonexamining physician."  Lester, 81 F.3d at 830.  An examining physician's

6 uncontradicted opinion, like a treating physician's uncontradicted opinion, may be rejected only

7 for clear and convincing reasons, and when an examining physician's opinion is contradicted by

8 another doctor, the examining physician's opinion may be rejected only for specific and

9 legitimate reasons supported by substantial evidence in the record.  Id. at 830-31.

10          "The opinion of a nonexamining physician cannot by itself constitute substantial

11 evidence that justifies the rejection of the opinion of either an examining physician or a treating

12 physician."  Id. at 831 (emphasis in original).  See id. at 831-32 (holding that the ALJ's rejection

13 of the opinions of a treating physician and an examining psychologist was not warranted where

14 the rejection was based on a nontreating, nonexamining doctor's opinion supplemented only by

15 unsupported and unwarranted speculation that the treating and examining doctors were

16 misrepresenting the claimant's condition or were not qualified to evaluate it); Pitzer v. Sullivan,

17 908 F.2d 502, 506 (9th Cir. 1990) (holding that the nonexamining doctor's opinion "with nothing

18 more" did not constitute substantial evidence for rejecting the opinions of treating or examining

19 physicians); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (holding that the report of

20 the nontreating, nonexamining doctor, even when combined with the ALJ's own observation of

21 the claimant at the hearing, did not constitute substantial evidence and did not support the ALJ's

22 decision to reject the examining physician's opinion that the claimant was disabled).

23          In the present case, plaintiff argues that the ALJ improperly ignored the findings

24 of a state agency psychologist who found various limitations on plaintiff's mental residual

25 functional capacity, including a moderate limitation on plaintiff's ability to complete a normal

26 workday and workweek without interruptions from psychologically based symptoms, plaintiff's

10

1    ability to interact appropriately with the general public, and plaintiff's ability to respond

2    appropriately to changes in the work setting.  Plaintiff asserts that findings of fact by state agency

3    physicians must not be ignored and that the opinions of such physicians must be viewed as

4    substantial evidence to the extent that their opinions rest on objective clinical findings and tests.

5    Plaintiff contends further that the limitations assessed by the state agency psychologist are fully

6    supported by the findings of a consultative examiner.

7            The record reflects that Gloria Edmunds, Ph.D., a state agency psychological

8    consultant, completed a Psychiatric Review Technique form and a Mental Residual Functional

9    Capacity Assessment form on May 18, 2004.  (Tr. at 236-49, 250-53.)  The latter form enables a

10   health care professional to record "summary conclusions derived from the evidence in file."  (Tr.

11   at 250.)  Dr. Edmunds' functional capacity assessment reveals that her summary conclusions are

12   derived entirely from an evaluation of plaintiff performed by Reuben J. Silver, Ph.D., in April

13   2004.  (Tr. at 252.)  Dr. Edmunds did not examine plaintiff and did not have available to her any

14   evidence that permitted her to make findings different from those of the examining doctor.  Dr.

15   Edmunds merely drew summary conclusions from Dr. Silver's findings.

16           Dr. Silver evaluated plaintiff approximately six weeks after his DIB application

17   was filed.  (Tr. at 191-94.)  The ALJ considered Dr. Silver's evaluation in determining whether

18   plaintiff's depression met or medically equaled Listed Impairment 12.04, Affective Disorders.

19   (Tr. at 24-26.)  The ALJ relied on Dr. Silver's findings that plaintiff was depressed, although not

20   profoundly so, that plaintiff described fleeting suicidal thoughts and feelings of worthlessness,

21   helplessness, and some hopelessness, that plaintiff had unimpaired cognitive functioning with

22   coherent, logical, and goal-directed thought processes, that plaintiff would be able to get along

23   with people and supervisors, and that plaintiff had not suffered a substantial loss in maintaining

24   concentration, persistence, and pace.  (Tr. at 25.)  The ALJ also noted that plaintiff's regular

25   activities required the ability to interact appropriately with others, maintain concentration,

26   persistence, and pace, and adjust to changes in routine work settings.  (Tr. at 26.)

1    The summary conclusions of nonexamining psychologist Dr. Edmunds cannot by
2 themselves constitute substantial evidence that contradicts or justifies the rejection of examining
3 psychologist Dr. Silver's opinions.  The ALJ was not required to adopt Dr. Edmunds' assessment
4 of moderate limitations on plaintiff's ability to complete a normal workday and workweek
5 without interruptions from psychologically based symptoms, on plaintiff's ability to interact
6 appropriately with the general public, or on plaintiff's ability to respond appropriately to changes
7 in the work setting.  The court concludes that plaintiff is not entitled to summary judgment on his
8 argument that the ALJ improperly ignored the opinion of a state agency physician.

9 **III.  ALJ's Vocational Findings**

10    At step five of the sequential evaluation process, if the ALJ relies on the testimony
11 of a vocational expert (VE), the ALJ must question the VE in a manner that properly takes into
12 account the limitations on the plaintiff's abilities to engage in various work-related functions.
13 Holohan v. Massanari, 246 F.3d 1195, 1208-09 (9th Cir. 2001).  "While the ALJ need not
14 include all claimed impairments in his hypotheticals, he must make specific findings explaining
15 his rationale for disbelieving any of the claimant's subjective complaints not included in the
16 hypothetical."  Light, 119 F.3d at 793.

17    Here, plaintiff argues that the ALJ's hypothetical question posed to the VE was
18 incomplete because the ALJ determined that plaintiff should never climb ladders, scaffolds, or
19 ropes and should avoid concentrated exposure to fumes and hazards, yet the ALJ failed to
20 include these limitations in the hypothetical question.  Plaintiff suggests that the jobs of
21 caretaker, janitorial worker, and laundry worker "would likely require, at least at times," some
22 use of a ladder or exposure to hazards.

23    Plaintiff argues next that the ALJ's vocational findings are not supported by
24 substantial evidence because the jobs identified by the ALJ and the VE, as described by the
25 Dictionary of Occupational Titles (DOT), conflict with the ALJ's hypothetical question.  Plaintiff
26 cites the ALJ's determination that plaintiff can perform "simple 1-2 step tasks" and asserts that,

1   according to the DOT, the jobs of caretaker, janitorial worker, and laundry worker require

2   performance of a large variety of tasks and often require judgment.  Plaintiff also argues that

3   these three jobs are not necessarily simple, despite a specific vocational preparation time (SVP)

4   of 2, because SVP levels do not address whether a job involves only simple or less than complex

5   tasks.

6          At the administrative hearing on August 1, 2005, the VE was sworn and testified

7   that there are three jobs plaintiff could perform given the RFC assessed by the ALJ – caretaker,

8   janitorial worker, and laundry worker – and that there is a significant number of such jobs in the

9   economy that plaintiff could perform.  (Tr. at 400.)  The ALJ asked the VE whether there was

10  any conflict between his testimony and the DOT, and the VE testified that his testimony was both

11  consistent with and not in conflict with the DOT.  (Id.)  The VE was accepted by the ALJ and by

12  plaintiff's North Carolina attorney as an expert witness, with expertise in vocational matters.[2]

13  (Tr. at 398.)  The VE had an opportunity to review the record, was present during the

14  administrative hearing, and had listened to plaintiff's testimony.  (Tr. at 398-99.)  The ALJ's

15  hypothetical question posed to the VE at this hearing included a limitation requiring plaintiff to

16  avoid concentrated exposure to fumes.  (Tr. at 400.)

17         At the supplemental administrative hearing on September 14, 2006, a different VE

18  was sworn and testified that there are three jobs plaintiff could perform given the RFC assessed

19  by the ALJ – kitchen helper/kitchen hand, warehouse worker, industrial housekeeper/janitor –

20  and that there was a significant number of such jobs in the economy that plaintiff could perform.

21  (Tr. at 418-21.)  The ALJ asked the VE whether his testimony was consistent with the DOT, and

22  the VE testified that his testimony was not in conflict with the DOT.  (Tr. at 421.)  The VE was

23  accepted by the ALJ and by plaintiff's attorney as an expert witness, with expertise in vocational

24

25  _____

26      [2]  A copy of the VE's resume is included in the record.  (Tr. at 68-69.)  As of August 2005, the VE had provided testimony for DIB applicants in over 13,000 cases.  (Tr. at 68.)

1   matters.[3]  (Tr. at 419.)  The VE had an opportunity to review the record and was present during

2   plaintiff's testimony.  (Tr. at 419.)  The ALJ's hypothetical question restricted plaintiff to no

3   climbing of ropes, ladders, and scaffolds, no exposure to hazards, and avoidance of concentrated

4   exposure to fumes.  (Tr. at 420.)

5           The court finds that both of plaintiff's challenges to the ALJ's vocational findings

6   lack merit.  First, the ALJ's hypothetical questions at both administrative hearings included

7   restrictions on exposure to fumes, and the hypothetical question at the second hearing included

8   restrictions on exposure to hazards and on climbing ropes, ladders, and scaffolds.  In addition,

9   defendant asserts that the DOT indicates that the jobs of laundry worker and janitor do not

10  require any climbing, while the job of caretaker requires occasional climbing at most.  The court

11  also finds that plaintiff appears to misunderstand the ALJ's RFC determination regarding "simple

12  1-2 step tasks."   The record does not support a conclusion that the ALJ intended to restrict

13  plaintiff to jobs that have only one or two steps repeated over and over.  If the ALJ had intended

14  such a restriction, he would have objected to the jobs suggested by the VE at each hearing,

15  because most, if not all, of the jobs involve numerous tasks, with each task involving one or two

16  steps.

17          Finally, at each hearing, plaintiff's attorney had an opportunity to challenge the

18  qualifications of the VE and did not do so.  Plaintiff's attorney also had an opportunity to cross-

19  examine each VE, and he did cross-examine them.  Each VE gave sworn testimony that the jobs

20  cited were consistent with and not in conflict with the DOT.  Plaintiff has not shown otherwise.

21          The court concludes that plaintiff is not entitled to summary judgment on his

22  argument that the ALJ's vocational findings are not supported by substantial evidence.

23  /////

24  /////

25

26          [3]  The VE was a vocational rehabilitation specialist in private practice.  (Tr. at 419.)

1

**CONCLUSION**

2    For the reasons set forth above, IT IS HEREBY ORDERED that:

3    1.  Plaintiff's June 6, 2008 motion for summary judgment (Doc. No. 17) is denied;

4    2.  Defendant's July 10, 2008 cross-motion for summary judgment (Doc. No. 18)

5 is granted; and

6    3.  The decision of the Commissioner of Social Security is affirmed.

7 DATED: August 14, 2009.

8

9    _____

10   DALE A. DROZD
     UNITED STATES MAGISTRATE JUDGE

11 DAD:kw
   Ddad1/orders.socsec/stiles1972.order

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26